

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-25-00091-CV

LUIS ENRIQUE CASTANON, Appellant

V.

THE CITY OF LONGVIEW, TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 2023-2089-A

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

Luis Enrique Castanon appeals the trial court's order granting a plea to the jurisdiction and dismissing his personal injury suit against the City of Longview. In two issues, Castanon challenges the independent grounds for governmental immunity asserted in the City's plea to the jurisdiction, arguing that (1) the Texas Tort Claims Act's (TTCA) emergency exception[1] does not apply, and (2) Officer Timothy Blickhahn is not entitled to official immunity. Because we conclude that official immunity preserves the City's governmental immunity, we affirm the trial court's judgment without addressing Castanon's emergency exception claim.[2]

## I. Background

Longview Police Department (LPD) Officer Timothy Blickhahn, along with his passenger and LPD Field-Training Officer, Tyler Webb, received a dispatch to back up LPD Officer Dillon Kennedy, who was alone on a pedestrian stop with two subjects. The backup call was coded as a "Priority 6," with a "Priority 8" call representing the lowest priority. The LPD's General Order No. 400.04(B)(7) assigns a two-hour response window to Priority 6 calls.

Proceeding immediately to Kennedy's location, Blickhahn approached an intersection to make a left-hand turn. Although Blickhahn had a "steady green signal," he did not have a "protected turn arrow." Webb's body-camera footage shows a white pickup stopped in the opposing inside lane, obstructing Blickhahn's view of the outside lane of oncoming traffic. The

---

[1]*See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2).

[2]Because official immunity is dispositive to the appeal, we need not address Castanon's point of error regarding the TTCA's emergency exception. *See City of Houston v. Sauls*, 690 S.W.3d 60, 68 n.10 (Tex. 2024).

footage also shows Blickhahn bringing the patrol unit to a complete stop and pausing before beginning the turn.

Once Blickhahn initiated the turn, Castanon, who also had a green light, can be seen in the recording appearing in the outside lane of oncoming traffic, and the vehicles then collide. In his affidavit, Blickhahn stated that he attempted to ensure the intersection was clear but did not see Castanon's vehicle because it sat lower than the white pickup and was obscured from his view. Blickhahn did not have his emergency lights or sirens activated during the response.

Castanon sued the City for negligence and negligence per se. The City filed an amended plea to the jurisdiction, which asserted two independent grounds for governmental immunity. Specifically, the City argued that (1) Castanon's claims fell within the emergency-response exception in Section 101.055(2) of the Texas Civil Practice and Remedies Code and (2) Blickhahn was entitled to official immunity and therefore would not be personally liable under Section 101.021(1)(B) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.021(1)(B), .055(2).

In support of its plea to the jurisdiction, the City provided evidence that Blickhahn was responding to a backup call where he knew that (1) Kennedy was alone on a pedestrian stop, (2) with multiple subjects, and (3) had not called off backup by "signaling a code [four]." Further, Blickhahn and Webb stated in their affidavits that, owing to the circumstances, they believed the need to back up Kennedy was an emergency that required an immediate response. LPD Deputy Chief, Darin Lair, also stated that the LPD computer system automatically assigns subject stops a Priority 6 designation but that the LPD considers backup for an outnumbered solo

3

officer who has not signaled a code four as requiring an immediate response. Finally, the City's expert, Michael Biship, opined that a reasonable officer in Blickhahn's position would have considered the situation an emergency requiring an immediate response.

After a hearing, the trial court granted the City's plea to the jurisdiction.

## II. Standard of Review

A trial court's ruling on a plea to the jurisdiction is reviewed de novo. *See Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009). When, as in this case, a plea to the jurisdiction challenges the existence of jurisdictional facts and the parties submit relevant evidence to resolve the jurisdictional issues raised, the standard mirrors that of a summary judgment. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004). Therefore, once the defendant has provided evidence that the trial court lacks subject matter jurisdiction, the plaintiff must show that a disputed material fact exists regarding the jurisdictional issue. *Id.* at 228. "[W]e take as true all evidence favorable to the nonmovant," "indulg[ing] every reasonable inference and resolv[ing] any doubts in [his] favor." *Id.*

## III. Applicable Law

The City—"[a]s a political subdivision of the state"—"is 'immune from suit unless [its] immunity is waived by state law.'" *City of Austin v. Powell*, 704 S.W.3d 437, 448 (Tex. 2024) (second alteration in original) (quoting *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022)). The TTCA waives the City's immunity for certain torts, but it "withdraws" the waiver in various circumstances. *See Rattray v. City of Brownsville*, 662 S. W.3d 860, 866 (Tex. 2023).

4

As relevant here, the TTCA withdraws the waiver of immunity if an employee would not be personally liable. *See City of Dallas v. Brooks*, 349 S.W.3d 219, 224 (Tex. App.—Dallas 2011, no pet.). The Texas Supreme Court has long emphasized the importance of official immunity in connection with law enforcement. *See Sauls*, 690 S.W.3d at 70; *City of San Antonio v. Riojas*, 640 S.W.3d 534, 541 (Tex. 2022).

"Because official immunity is an affirmative defense, the [City] must . . . prove each element of the defense." *Univ. of Hous. v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000). Thus, in order to be shielded by official immunity, the City must show that Blickhahn was (1) performing a discretionary duty (2) within the scope of his authority (3) while acting in good faith. *Id.*

## IV.  Analysis

The parties do not dispute that Blickhahn was acting within the scope of his authority. This appeal, therefore, turns on the remaining elements of official immunity: whether Blickhahn was performing a discretionary duty and acting in good faith. Castanon contends that the City failed to establish both elements. As to discretionary duty, he argues that Blickhahn's operation of his vehicle was ministerial because he was required to respond to the call and was only exercising "traffic judgment" at the moment of the collision. As to good faith, Castanon argues that no reasonably prudent officer would have believed that the need to reach Kennedy immediately outweighed the risk of turning across oncoming traffic with an obstructed view.

### A.  Discretionary Duty

Because official immunity only protects a government employee while performing a discretionary duty, courts distinguish between a discretionary and ministerial duty. *See Sauls*,

5

690 S.W.3d at 70. "A duty is discretionary if its performance involves 'personal deliberation, decision, and judgment' . . . ." *Id.* (quoting *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 425 (Tex. 2004); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994)). A duty is ministerial, on the other hand, if the performance of it "require[s] obedience to orders or the performance of a duty to which the actor has no choice." *Chambers*, 883 S.W.2d at 654. In determining whether an act is discretionary, the focus is on whether an employee was performing a discretionary function—not whether the employee had "the discretion to do an allegedly wrongful act while discharging that function." *Id.* at 653.

### 1. The City's Evidence Established that Blickhahn Was Performing a Discretionary Duty

Generally, the non-emergency operation of a vehicle by a police officer "while on [official] business is . . . a ministerial act." *Harris Cnty. v. Gibbons*, 150 S.W.3d 877, 886 (Tex. App.—Houston [14th Dist.] 2004, no pet.). But an officer's operation of a vehicle need not occur during a formally designated emergency to constitute a discretionary function. *See Collins v. City of Houston*, No. 14-13-00533-CV, 2014 WL 3051231, at *4 (Tex. App.—Houston [14th Dist.] July 3, 2014, no pet.) (mem. op.) (citing *Ramos v. Tex. Dep't of Pub. Safety*, 35 S.W.3d 723, 727–29 (Tex. App.—Houston [1st Dist.] 2000, pet. denied)); *City of Dallas v. Perez*, No. 05-23-00376-CV, 2024 WL 3593740, at *4 (Tex. App.—Dallas, July 31, 2024, no pet.) (mem. op.).

Instead, courts consider whether circumstances demonstrate that the officer's operation of a motor vehicle "involves personal deliberation or the exercise of professional expertise, decision, or judgment." *Brooks*, 349 S.W.3d at 225; *Woods v. Moody*, 933 S.W.2d 306, 308

6

(Tex. App.—Houston [14th Dist.] 1996, no writ). Accordingly, courts have recognized a wide range of situations where an officer's operation of a vehicle is discretionary, such as high-speed chases, investigations, traffic stops, and responding quickly to an officer's call for assistance. *See Chambers*, 883 S.W.2d at 655 (an officer engaging in a high-speed chase performs a discretionary act); *Harless v. Niles*, 100 S.W.3d 390, 398 (Tex. App.—San Antonio 2002, no pet.) (holding that an officer's decision to violate traffic laws in order to quickly reach the scene of suspected criminal activity and assist another officer there was a discretionary act); *Webb Cnty. v. Lino*, No. 04-19-00891-CV, 2020 WL 4218714, at *5 (Tex. App.—San Antonio July 22, 2020, no pet.) (mem. op.) (initiating a routine traffic stop is a discretionary act); *Brooks*, 349 S.W.3d at 226–27 (an officer responding at a high rate of speed to call for back-up involving a combative/suicidal person was performing a discretionary duty); *Collins*, 2014 WL 3051231, at *5 ("responding [quickly] to radio broadcast requesting assistance to apprehend a reckless motor[ist]" is a discretionary act).

Here, the City's evidence shows that Blickhahn knew an officer was alone on an active stop involving multiple subjects. Blickhahn also knew Kennedy had not called off backup by signaling a code four. Furthermore, Lair stated that while the LPD's computer system defaults every subject stop and traffic stop as a Priority 6, the LPD considers backup calls for a solo officer who has not signaled a code four on a multiple- subject stop as "requiring an immediate and very prompt response." Thus, even though the call was not coded as an emergency, the City's evidence demonstrates a situation that could fairly be categorized as urgent and requiring an immediate response. *See Hulick v. City of Houston*, No. 14-20-00424-CV, 2022 WL 288096,

7

at \*4 (Tex. App.—Houston [14th Dist.] Feb. 1, 2022, pet. denied) (mem. op.) (noting cases where an officer's operation of a vehicle was found to be discretionary under "circumstances fairly characterized as urgent").

Castanon, however, contends that because LPD required backup for every subject stop, Blickhahn's response was necessarily ministerial rather than discretionary. But such an argument improperly conflates the discretion to respond with an officer's discretion regarding how to respond. *See Sauls*, 690 S.W.3d at 72 (finding that an officer was performing a discretionary duty where he had discretion over how to respond, even though he was required to respond).

Citing LPD procedures, Castanon highlights that officers are required to respond to requests for assistance and thus argues that Blickhahn simply obeyed an order. However, the LPD's General Orders also provide a directive granting its officers discretion in how they respond to a call.[3] Lair's statement that the LPD treats certain calls as urgent, regardless of the priority they are coded, further demonstrates that officers have discretion in how they respond. Thus, even where a call is coded as low priority or routine, the LPD allows its officers to assess the urgency presented by the circumstances and determine the appropriate manner of response. *See Sauls*, 690 S.W.3d at 71; *Brooks*, 349 S.W.3d at 226 (finding an officer was performing a discretionary duty in responding to a backup call without the use of lights or sirens, where the department's general orders left it to the officer's discretion to do so by upgrading the response

---

[3]General Order No. 400.04(F)(1)(c) provides that, among other situations, the following is considered an emergency call by the LPD: "Any call, regardless of the original dispatch priority classification, where information has become available to the officer or dispatcher that indicates a threat to life exists and justifies an emergency response."

8

to a "Code [Three]"). Blickhahn stated in his affidavit that based on his experience and the circumstances presented to him, he determined that the call required an immediate response. In doing so, Blickhahn exercised "personal deliberation, decision, and judgment" in how to respond and was therefore performing a discretionary duty. *See Chambers*, 883 S.W.2d at 654.

### 2. The Collision Occurred While Blickhahn Was Performing a Discretionary Function

Even so, Castanon argues that, at the moment of the collision, Blickhahn was exercising only ministerial "traffic judgment." That framing, however, improperly isolates Blickhahn's left turn from the circumstances in which he made it. *See Chambers*, 883 S.W.2d at 653. The proper inquiry is whether Blickhahn was performing a discretionary function when the collision occurred, not whether he "ha[d] discretion to do an allegedly wrongful act while discharging that function." *Id.*

As discussed above, the City's evidence establishes that Blickhahn was performing a discretionary duty in responding to the backup call. Still, a previous discretionary act does not render every subsequent ministerial act discretionary. *See City of Houston v. Nicolai*, 695 S.W.3d 489, 499–500 (Tex. App.—Houston [1st Dist.] 2024, pet denied) (en banc). The "traffic judgment" cases relied upon by Castanon instead recognize that there must be a nexus between the discretionary act and the injury-producing conduct. *See id.*; *Hulick*, 2022 WL 288096, at *4. In *Nicolai*, for instance, an officer decided to transport an intoxicated individual to a sobering unit instead of jail but failed to secure her with a seatbelt. *Nicolai*, 695 S.W.3d at 492. While en route, another vehicle struck the patrol unit, and the unrestrained passenger was ejected and fatally injured. *Id.* Finding that the officer's discretionary act to take the individual to a sobering

9

center "did not affect the performance of the transport," the court concluded that the City had not established official immunity. *Id.* at 500.

Here, by contrast, Blickhahn's assessment that the backup call required an immediate response continued to affect how he operated his patrol unit. According to his affidavit, the urgency he perceived informed his decision to proceed with the left turn after stopping and assessing the traffic conditions. Thus, the injury-producing conduct occurred as a result of the discretionary function Blickhahn was performing. *See Chambers*, 883 S.W.2d at 653.

We therefore find that the City met its burden by establishing that Blickhahn was performing a discretionary duty when the collision occurred and that Castanon failed to raise a fact issue in response.

### B. Good Faith

Castanon argues that no reasonably prudent officer would have believed the need to provide immediate backup outweighed the risk of turning across oncoming traffic with an obstructed view. He contends that the City's evidence did not adequately address safer alternatives, such as waiting for the obstruction to clear or activating emergency lights and sirens, and that a fact issue exists as to what Blickhahn knew regarding Kennedy's situation.

### 1. Applicable Law

Good faith is measured by objective-legal reasonableness: whether "a reasonably prudent officer, under the same or similar circumstances, could have believed" that the officer's conduct was justified. *Id.* at 656. "[T]he 'could have believed' aspect does not require a showing that 'all reasonably prudent officers' would have taken the action; it requires only that

10

'a reasonably prudent officer might have believed' that the action should have been taken." *Sauls*, 690 S.W.3d at 73 (quoting *Chambers*, 883 S.W.2d at 656–57).

To establish good faith for conduct that carries an inherent risk of harm to the public, the City's evidence must sufficiently address the *Wadewitz v. Montgomery* need-risk factors "based on the officer's perception of the facts at the time of the event." *Id.* at 74 (quoting *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 (Tex. 1997)). In *Wadewitz*, the Texas Supreme Court explained that the "need"

> is determined by factors such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result.

*Wadewitz*, 951 S.W.2d at 467. "[R]isk," on the other hand,

> refers to the countervailing public safety concerns: the nature and severity of harm that the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident would prevent the officer from reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer.

*Id.*

"But the test does not require proof that the officer considered and assessed the *Wadewitz* need–risk factors *ex ante*." *Sauls*, 690 S.W.3d at 74. The Texas Supreme Court has repeatedly emphasized that this test "does not place an onerous burden on law enforcement." *Id.* at 75 (quoting *Riojas*, 640 S.W.3d at 539). For instance, "[a]lternative courses of action may be 'implicitly discounted' instead of 'explicitly address[ed].'" *Id.* (second alteration in original) (quoting *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 645 (Tex. 2015) (per curiam)). Furthermore, "[e]ven if the evidence reveals a viable alternative, good faith is not necessarily

11

negated," as it is just one factor to consider. *Id.* The good-faith standard is analogous to the deferential abuse-of-discretion standard that protects "all but the plainly incompetent." *Id.* (quoting *Chambers*, 883 S.W.2d at 656).

In contrast, the nonmovant "bears an 'elevated standard of proof.'" *Id.* (quoting *Chambers*, 883 S.W.2d at 656). "To controvert proof of good faith, the plaintiff must show, with 'reference to each aspect of the need and risk balancing test,' that *no* reasonably prudent officer 'in the defendant's position could have thought the facts were such that they justified defendant's acts.'" *Id.* at 75–76 (footnote omitted) (citation omitted) (first quoting *Clark*, 38 S.W.3d at 587; and then quoting *Chambers*, 883 S.W.2d at 657).

### 2. Discussion

In support of good faith, the City relied on affidavits from Blickhahn and Webb as well as expert testimony. As to the "need" factors, Blickhahn and Webb stated in their affidavits that they were both "aware of the dangers posed when a single police officer is outnumbered" on a multiple-subject stop and that they "consider[ed the] situation to be an emergency requiring an immediate and very prompt response," especially where, as in this case, "the solo officer on the stop ha[d] not radioed to dispatch to cancel back up." Moreover, the alternative method of waiting for a green arrow was implicitly discounted by the officers' belief that immediate action was necessary and that further delay was not warranted after Blickhahn had come to a complete stop and assessed traffic. *See id.* at 75; *Bonilla*, 481 S.W.3d at 645 ("Although not explicitly addressing alternatives to pursuit, the trooper implicitly discounted the viability of other alternatives based on his stated belief that immediate action was necessary and his inability to

12

identify the driver at that time."). As for the use of emergency lights and sirens, "[e]ven if the evidence reveals a viable alternative, good faith is not necessarily negated; the availability of alternatives 'is just one factor' and 'does not alone determine good faith.'" *Sauls*, 690 S.W.3d at 75 (quoting *Bonilla*, 481 S.W.3d at 644 n.22). Finally, the Biship opined that a "reasonable peace officer facing the same or similar circumstances would also deem the response to Officer Kennedy to be an emergency."

Regarding the risk factors, the City's evidence addresses "the facts and circumstances that affected the risks." *See id.* (citing *Clark*, 38 S.W.3d at 586). As in *Sauls*, Blickhahn stated in his affidavit the "impediments to his sight" of the outside lane of the intersection, and the precautions he took to mitigate risk, such as bringing his patrol unit to a complete stop at the green light to assess the traffic conditions. *See id.* at 77. Blickhahn further stated that, "because of the emergent situation at hand in backing up Officer Kennedy," he proceeded with the left turn after stopping and assessing traffic. Considering this evidence under the deferential lens required by the good-faith standard, we conclude that the City established that a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately arrive at the location in question outweighed any risk of harm to the public in proceeding through the intersection as Blickhahn did.

Since the City has put forward competent evidence of good faith, "good faith is established unless [Castanon] show[s] that no reasonably prudent officer in [Blickhahn's] position could have thought the facts justified his actions." *Id.* at 78. Castanon did not put forward any expert testimony addressing whether no reasonably prudent officer could have made

13

the same decision. *See City of Houston v. Rodriguez*, 704 S.W.3d 462, 475 (Tex. 2024) (noting plaintiff's lack of expert testimony).

Instead, Castanon challenges the factual basis of Biship's expert opinion by asserting that a fact issue exists concerning what Blickhahn knew when he responded. Specifically, Castanon contends that Blickhahn lacked any contemporaneous information indicating that Kennedy was outnumbered and, therefore, could not reasonably have believed that the need for an immediate response outweighed the risk of proceeding through the intersection. However, in Webb's body-camera footage, Kennedy can be heard running a background check for the individuals he stopped. Kennedy states, "First one, name and date of birth" before providing information for a subject with an Idaho driver's license. Thus, unlike the cases relied upon by Castanon, Biship's expert opinion did not depend on an assumption unsupported by the record or on resolving conflicting evidence in the City's favor. *See Collins*, 2014 WL 3051231, at *6 (finding that the city had failed to establish good faith because its expert opinions relied on assumptions not supported by the record); *City of Houston v. Manning*, No. 14-23-00087-CV, 2025 WL 3165693, at *5 (Tex. App.—Houston [14th Dist.] Nov. 13, 2025, op. on remand) (declining to find that the city had met its burden of establishing good faith where such a finding required crediting an expert opinion that was based on "assuming the truth of disputed facts in a light favorable to the movant").

Moreover, Castanon applies an incorrect standard in arguing that no reasonable officer in Blickhahn's position *would* have believed that the circumstances justified his conduct. *See City of Mesquite v. Wagner*, 712 S.W.3d 609, 615 (Tex. 2025) (per curiam). That formulation

14

improperly asks what Blickhahn should have done, rather than whether no reasonable officer could have believed as Blickhahn did. *See id.*; *Sauls*, 690 S.W.3d at 79 ("Good faith does not require that the officer made the best decision or eliminated all risk . . . ."). Thus, Castanon's evidence indicating Blickhahn exercised improper judgment in failing to yield the right-of-way "[a]t most, . . . raises a question about [Blickhahn's] negligence or is some evidence that a reasonably prudent officer could have made a different decision," "[b]ut it does not satisfy [Castanon's] elevated" burden. *Rodriguez*, 704 S.W.3d at 475 (citing *Sauls*, 690 S.W.3d at 80). We therefore hold that Castanon failed to raise a fact issue by controverting the City's proof of good faith.

## V. Conclusion

We affirm the trial court's judgment.


        Scott E. Stevens
        Chief Justice


Date Submitted:     June 3, 2026
Date Decided:       August 5, 2026

15